STATE of Tennessee, on the Relation of E.M. O'BRIEN, Plaintiff/Appellant,

v.

Jenny MASSENGILL, James Durdin, Verdell Pierce, and Roy Cole, in their capacity as the Benton County Election Commission, Defendants/Appellees.

Supreme Court of Tennessee, at Jackson.

Aug. 22, 1988.

Charles H. Farmer, Spragins, Barnett, Guy, Farmer & Cobb, Jackson, for plaintiff/appellant.

John W. Whitworth, Camden, for defendants/appellees.

## OPINION

PER CURIAM.

This action was initiated by a complaint for mandamus in the Benton County Chancery Court. The suit charged that defendants, acting in their capacity as the Benton County Election Commission, had failed to abide by the requirements of T.C.A. § 2–9–109. This code section mandates that precincts having more than three hundred (300) registered voters shall be equipped by the county in which they are located with voting machines for use in all elections. The statute further provides that if the governing body of any county does not provide voting machines as required, the County Election Commission shall equip the precincts with voting machines in accordance with T.C.A. § 2–9–112—2–9–114, acting instead of the governing body of the county. Defendants filed a motion to dismiss the complaint averring that T.C.A. § 2–9–109 had been amended by Chapter 641 of the Public Acts of 1974, exempting Benton County from the provisions of the Act. The complaint was amended to add the Benton County

Commission as defendants and to allege that if such an amendment to the statute existed it was in violation of Article XI, Sec. 8 of the Tennessee Constitution and was therefore an unconstitutional enactment.

The case came on to be heard on the sole issue of the constitutionality of Chapter 641 of the Public Acts of 1974, which reads as follows:

"However, in counties having populations of not less than Twelve Thousand One Hundred (12,100) nor more than Twelve Thousand Two Hundred (12,200), according to the federal census of 1970 or any subsequent federal census, voting machines for any precinct having fewer than One Thousand (1,000) registered voters shall not be purchased without the approval of the county commission."

After a full hearing on the matter the Chancellor found that Benton County was the sole beneficiary of the amendment to the general statute. He found from the evidence that the reason for exempting Benton County from the general law was due to the tremendous financial burden that the purchase of voting machines would impose on the county. He also found there was evidence that some six (6) years after the enactment of the statute it was estimated that an initial outlay for voting machines would have cost the county approximately $90,000 to $100,000 and there were no direct cost figures given for the time the amendment was passed in 1974. The court concluded that the financial burden to the citizens of Benton County in 1974, while perhaps a "poor one," was, at least, a "fairly debatable" and "possible reasonable basis" for allowing Benton County's exclusion from the requirement imposed on other counties relating to voting machines. He further held that the plaintiff had failed to carry the burden of overcoming the presumption of the constitutionality of Chapter 641 of the Public Acts of 1974 and that the Act did not violate Article XI, Sec. 8 of the Tennessee Constitution.

The legislative representative, now the senator, for the district which encompasses

Benton County testified that the county judge in office at that time approached him on behalf of the Benton County Court to exempt the county from the general act because the county could not afford to purchase the machines. He also testified that at the time Chapter 641 was enacted only a few of the twenty (20) voting precints in Benton County would have had more than three hundred (300) registered voters. It was his understanding that at the time there were four or five precincts within the city limits of Camden with voters exceeding that number.

The county executive who took office on 1 September 1974, five months after the effective date of the exemption Act, testified that on two occasions since its enactment the county commission had elected not to install voting machines because the county was exempt. The individual commissioners felt that the majority of their constituents did not want voting machines in their districts. It was not a matter of affordability.

Sandra Hubbs, the Register–At–Large for Benton County, testified that on the date of trial the lever-type voting machines would have cost $3,975 each and that a punch card system approved by the State would have cost a total of $38,974.35. She testified that in 1974 the county did not have the money to purchase the machines and the election commission had left the decision to the county court to decide when to buy them.

This was substantially the evidence adduced at trial. The issue was stated by the Chancellor to be, "whether the economic impact on Benton County which would have resulted from the purchase of voting machines in 1974 was a reasonable basis for excluding the county from the General Act." The Chancellor found that the financial burden on the county in 1974 must be assumed and was not contradicted by the plaintiff who had the burden of proof in attacking the constitutionality of the Act. His ruling included the further assumption that Benton County was unique in this respect and this too was not controverted by plaintiff.

Our review of the findings of fact by the trial court is de novo upon the record, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.R. A.P. 13(d). On the evidence in this record and those additional facts which are within our province to consider, we hold that the evidence preponderates against the findings of the Chancellor.

Article XI, Sec. 8 of the Constitution provides in pertinent part:

**Sec. 8. General laws only to be passed.** —The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law.

Undoubtedly the plaintiff was entitled to a writ of mandamus under the provisions of T.C.A. § 5–1–107. However, when the complaint was amended to charge that the amendment to T.C.A. § 2–9–109 exempting Benton County from the general act was unconstitutional, a heavy burden fell upon his shoulders.

We note that initially plaintiff did not attack the constitutionality of the amendatory act to T.C.A. § 2–9–109. This issue was first raised as an affirmative defense by the original defendants in a motion to dismiss the complaint. For some reason, not established in this record, Chapter 641 of the Public Acts of 1974 was not printed in the official code until the 1987 supplement was published. Therefore there was no way for the general public to know of its existence. An amendment to the complaint was filed to respond to the defense motion to dismiss. Plaintiff then averred that the uncodified Public Act was unconstitutional and in violation of Article XI, Sec. 8 of the Tennessee Constitution. Noting that a statutory provision cannot be attacked as being unconstitutional by a per-

son not adversely affected by it, *Hicks v. Rhea County,* 225 S.W.2d 544, 189 Tenn. 383 (1950), we conclude that in his role as relator and substantive plaintiff in this case he established his right to proceed with the action.

In finding that Chapter 641 did not violate the Constitution the Chancellor considered as authority this Court's decision in *Brentwood Liquors Corp. of Williamson County v. Fox,* 496 S.W.2d 454, 457 (Tenn. 1973) in which the Court held that Article XI, Sec. 8 of the Constitution is applicable to private or special legislation affecting a county or municipality in the exercise of its governmental functions. The Court also said at p. 457, where such legislation operates to suspend the general law on the same subject, the validity of such legislation is determined upon the issue of whether there is a reasonable basis for the discrimination. In concluding that the financial burden on Benton County established a reasonable basis for the enactment of the contested legislation, it is plain the Chancellor overlooked the testimony of Senator Frank Lashlee and Sandra Hubbs, the Benton County Register–At–Large, both of whom testified that in 1974 there were twenty (20) precincts in Benton County. Of this number Lashlee testified that at the time the legislation was enacted there were four or five precincts inside the city which had more than three hundred (300) registered voters. Hubbs testified that the cost of lever-type voting machines at the time of trial was $3,975 each. At that price the most the voting machines could have cost the county at the time of the exception would have been in the neighborhood of $20,000, not the $90,000 to $100,000 figure which appears in the record. That is obviously the amount which the county would have been required to expend to place voting machines of the lever-type in those precincts having more than 300 registered voters. There was also evidence that the entire cost of a punch card system, which could be utilized with State approval, would have been approximately half of that amount. Furthermore, T.C.A. § 2–9–112—2–9–114 makes provision for a "contract, lease and option" agreement whereby the State would finance the acquisition of a sufficient number of voting machines to comply with the act.

In the light of the evidence in the record and the unmistakable recognition by the State in enacting the statute that some of the more rural counties might need financial assistance in acquiring the voting machines mandated by the Act, it seems apparent that there was no reasonable basis for the enactment of the 1974 amendment to T.C.A. § 2–9–109 excepting Benton County from the general act.[1]

It is this Court's responsibility to give to statutes upon trial for their constitutionality the benefit of every reasonable doubt, to indulge every reasonable presumption in their favor, and adopt that construction, in cases of doubt which will sustain the validity of the law. However, we cannot, in this case, find any facts which can reasonably sustain the constitutionality of the enactment in question.[2] We hold that Chapter 641 of the Public Acts of 1974 amending T.C.A. § 2–9–109, exempting Benton County from the general laws does violate Article XI, Sec. 8 of the Tennessee Constitution.

The case is remanded to the trial court for further proceedings on the petition for writ of mandamus. Costs are adjudged against the defendants.

---

1. This Court also takes judicial notice of the fact that none of the other 94 counties in the State have seen the necessity to seek out such an exemption.

2. Although this condition did not exist in 1974, we note that at the present time Benton County has more than Eight Million Dollars in a reserve account.