IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 20, 2013 Session

STATE EX REL. TANYA AINA-LABINJO v. METROPOLITAN
NASHVILLE BOARD OF PUBLIC EDUCATION, ET AL.

Appeal from the Chancery Court for Davidson County
No. 12587III    Ellen H. Lyle, Chancellor

No. M2012-01176-COA-R3-CV - Filed June 6, 2013

Metropolitan Nashville Board of Education appeals the issuance of a writ of mandamus
compelling it to hear an appeal of the termination of a non-teaching employee. The Board
contends that the chancery court lacked jurisdiction to issue the writ and that state law
preempts the right to a hearing granted to employees of the Board under the Metropolitan
Charter. We affirm the holding that the chancery court has jurisdiction under Tenn. Code
Ann. §§ 16-11-102(a) and 29-25-101 to issue the writ; we vacate the judgment issuing the
writ and remand the case for an evidentiary hearing as to whether the Board has developed
a policy with respect to the dismissal of employees as required by Tenn. Code Ann. § 49-2-
301(b)(1)(FF) and whether such policy preempts the pertinent provisions of the Metropolitan
Charter.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in
Part and Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT,
JR., J., joined. PATRICIA J. COTTRELL, P. J., M. S., filed a dissenting opinion.

J. Brooks Fox, Nashville, Tennessee, for the Appellant, Metropolitan Nashville Board of
Education.

Cecil Dewey Branstetter, Jr., and Michael J. Wall, Nashville, Tennessee, for the Appellee,
Tanya Aina-Labinjo.

OPINION

Tanya Aina-Labinjo filed a petition for a writ of mandamus to compel the
Metropolitan Board of Education (the "Board") and Dr. Jesse Register, the Director of
Schools, to hear an appeal of her termination from employment as a cashier at a high school

cafeteria.[1]  Alternatively, Ms. Aina-Labinjo sought to have the court declare that she had a right to appeal her termination to the Board under provisions of the Charter of the Metropolitan Government of Nashville ("Metro Charter") and to have the court order the Board to hear her appeal.  Defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim; the Board contended that it was not a civil service board because the Education Improvement Act of 1991 ("EIA"),[2] now codified in part at Tenn. Code Ann. § 49-2-301(b)(1), "placed employment powers solely in the hands of the Director of Schools" and because all non-licensed employees "became 'at will'" following 2011 amendments to the EIA.  The Board subsequently filed an answer denying that the Board had a duty to hear Plaintiff's appeal.

The court issued a Memorandum and Order denying the Defendants' Motion to Dismiss and granting Ms. Aina-Labinjo's request for a peremptory writ of mandamus.[3]  In so ruling, the court concluded that "Metro Charter § 9.10 and 12.09 require the Board of Education to act in the capacity of a civil service commission concerning non-teaching employees who are dismissed" and that "public policy favors an appeal to the Board of Education."  On its own initiative, the court amended the order by, *inter alia*, adding as a conclusion that Tenn. Code Ann. § 49-2-301(b)(1)(FF) does not explicitly or implicitly "abrogate or repeal an appeal to the School Board provided in sections 9.10 and 12.09 of the Metro Charter."

The Board appeals, contending that the trial court erred "in mandating that Ms. Aina-Labinjo (a non-licensed schools employee) be given 'civil service' status and that the School Board act as her 'civil service board' under the Metro Charter's civil service provisions."

---

[1]  Proceedings for mandamus must be made in the name of the state on the relation of the petitioner. *Whitesides v. Stewart*, 20 S.W. 245, 246 (1892).  In accordance with that requirement, the petition was filed in the name of the State of Tennessee on relation of Ms. Aina-Labinjo.

[2]  The EIA was enacted by 1992 Tenn. Pub. Acts, ch. 535 and amended and repealed provisions of Tenn. Code Ann., Titles 8 and 49; the only provisions of the EIA considered in this appeal are those codified at Tenn. Code Ann. § 49-2-301(b)(1).

[3]  The court issued the peremptory writ under the authority of Tenn. Code Ann. §§ 29-25-102(2) and 29-25-108(a).

**ANALYSIS**

## I. Jurisdiction of the Chancery Court

The chancery court held that Tenn. Code Ann. § 16-11-102(a),[4] granted it concurrent jurisdiction with the circuit court to issue the writ of mandamus and that Tenn. Code Ann. § 29-25-101[5] is a separate grant of jurisdiction to issue the writ. The Board argues that Tenn. Code Ann. § 5-1-107 vests circuit courts with exclusive jurisdiction to issue writs of mandamus to enforce county duties and, consequently, that the chancery court was without jurisdiction to issue the writ. The resolution of whether a court has subject matter jurisdiction is a question of law, which we review *de novo* with no presumption of correctness. *Schutte v. Johnson*, 337 S.W.3d 767, 769 (Tenn. Ct. App. 2010). As we consider this matter, it is useful to review the evolution of the jurisdiction of courts to issue writs of mandamus in our State.

Tenn. Code Ann. § 5-1-107 is derived from Section 537 of the Tennessee Code of 1858 (the "1858 Code"), which stated: "The performance of any duty made incumbent by law upon the county may be enforced by mandamus from the circuit court, according to the nature of the case." This wording of the statute has not been amended since 1858.

Tenn. Code Ann. § 16-11-102 is derived from Chapter 97 of the Tennessee Public Acts of 1877. Chapter 97 was originally entitled "An Act to increase the jurisdiction of the Chancery Court" and granted chancery courts concurrent jurisdiction with circuit courts over all civil causes of action "except for [actions to recover for] injuries to person, property or character, involving unliquidated damages." The court in *Hawkins v. Kercheval*, 78 Tenn. 535 (1882), held that Chapter 97 expanded the jurisdiction of chancery courts to all civil causes of action, specifically including jurisdiction to issue a writs of mandamus.[6]

---

[4] Tenn. Code Ann. § 16-11-102(a) states:

The chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court, except in the cases excepted.

[5] Tenn. Code Ann. § 29-25-101 states: "Circuit judges and chancellors have power to issue writs of mandamus, upon petition or bill, supported by affidavit."

[6] Chapter 97 was also amended by the Tennessee Public Acts of 1915, chapter 47, by rewording the exceptions regarding unliquidated damages; the 1915 amendment is not material to the issues in this suit.

Another provision of the 1858 Code—Section 3567—vested circuit judges with the "power to issue writs of mandamus, upon petition, supported by affidavit made before any Judge, Justice of the Peace, or clerk of any Circuit Court." The Tennessee Code was republished in 1917, and Section 3567 was carried forward as originally worded. When the Code was revised and sections renumbered in 1932, Section 3567 of the 1858 Code was renumbered to Section 9491 and the language changed to provide as follows: "Circuit judges and chancellors have power to issue writs of mandamus, upon petition or bill, supported by affidavit." This amended version of the original Section 3567 of the 1858 Code is now codified at Tenn. Code Ann. § 29-25-101.

While the Board acknowledges that Tenn. Code Ann. § 29-25-101 gives chancellors the power to issue writs of mandamus, it contends that the powers granted in that statute do not apply as to the enforcement of county duties, in which instance "Tenn. Code. Ann. § 5-1-107 controls." We have reviewed the cases relied upon by the Board as well as other cases in which chancery courts have considered issuing writs of mandamus. We have not found any case squarely holding either that a chancery court lacks subject matter jurisdiction to hear mandamus actions with respect to county duties or that Tenn. Code Ann. §5-1-107 is the exclusive mechanism for bringing a mandamus action to enforce a county duty.[7]

---

[7] In *Holcomb v. Lee*, No. E2005-01451-COA-R3-CV, 2006 WL 1408399 (Tenn. Ct. App. May 23, 2006), a juvenile court judge sued the county mayor seeking funds for salary increases for employees of the juvenile court clerk's office. The trial court dismissed the suit for lack of standing; on appeal, this Court held that the judge did have standing to bring the action but affirmed the dismissal because the judge "did not file a petition for writ of mandamus and because such action was not filed in the circuit court as required by Tenn. Code Ann. § 5-1-107." *Id.* at *6–8.

In *State ex rel. Paduch v. Washington Cnty.*, No. 03A01-9311-CH-00397, 1994 WL 421083 (Tenn. Ct. App. Aug. 12, 1994), eight taxpayers brought a mandamus action in chancery court against Washington County and its Commissioners, the City of Johnson City and its Commissioners, the Johnson City School Board, and the Washington County Trustee, seeking repayment of taxes collected by the county which plaintiffs alleged should have been divided with Johnson City. The City and the County moved to dismiss the action on the ground, *inter alia,* that they had settled the matter; the trial court granted the motion on that ground. *Id*. at *1. On appeal, in addition to contending that the trial court's dismissal on the settlement grounds was correct, the County contended that the action was improper because the plaintiffs relied on the general mandamus statutes codified at Tenn. Code Ann. § 29-25-101 *et seq.* rather than Tenn. Code Ann. § 5-1-107. *Id.* at *6. This Court affirmed the dismissal on the grounds that the matter had been resolved between the City and the County and that the reallocation of past funds was not a ministerial act. *Id.* The court specifically declined to "discuss the merits of Relators' complaint as it relates to T.C.A. § 5-1-107." *Id.*

In *Knox Cnty. v. Foote Mineral Co.*, No. 88-122-II, 1988 WL 97225 (Tenn. Ct. App. Sept. 23, 1988), Knox County filed suit in chancery court seeking certiorari review of the Tennessee Department of Health and Environment and the Tennessee Solid Waste Control Board's decisions requiring Foote Mineral Company and Knox County to clean up hazardous waste. The chancellor affirmed the decisions; the county

(continued...)

-4-

As the history recited above shows, the jurisdiction of the chancery court was expanded in 1877 to give the chancery court concurrent jurisdiction with circuit court over civil causes of action and again by the amendment to Section 3567 of the 1858 Code which expressly vested chancellors with the power to issue writs of mandamus. As those statutes exist today, Tenn. Code Ann. § 16-11-102 vests chancery courts with concurrent jurisdiction over all civil causes of action including petitions for writs of mandamus, and Tenn. Code Ann. § 29-25-101 separately grants chancellors the power to issue writs of mandamus. There is no indication from the history of the amendments that the Legislature at any time intended to except cases involving "[t]he performance of any duty made incumbent by law upon the county" from the subject matter jurisdiction of chancery courts.[8] Neither is there any basis upon which to hold that Tenn. Code Ann. § 5-1-107, which pre-dates the expansion of the chancery court's jurisdiction and has not been amended, is the exclusive manner to enforce county duties. Further, the language of Tenn. Code Ann. § 5-1-107—that duties made incumbent by law upon the county *may* be enforced by mandamus from the circuit court—is permissive rather than exclusionary.

Based upon the evolution of the jurisdiction of chancery courts, particularly over mandamus actions, and the permissive language of Tenn. Code Ann. § 5-1-107, we agree that the chancery court had jurisdiction under Tenn. Code Ann. §§ 16-11-102(a) and 29-25-101 to issue a writ of mandamus in this case.

---

[7](...continued)
appealed to this Court contending, *inter alia*, that Tenn. Code Ann. § 5-1-107 provided the sole remedy against the county. *Id.* at *2. This Court rejected the county's argument and affirmed, stating: "The word 'may' [in Tenn. Code Ann. § 5-1-107] is permissive and not exclusionary. Absent the word 'only' in the statute, the availability of other statutory remedies is not precluded." *Id.*

In *State ex rel. O'Brien v. Massengill*, 756 S.W.2d 246 (Tenn. 1988), Plaintiff brought a mandamus action in chancery court charging that the Benton County Election Commission had failed to purchase voting machines as required by Tenn. Code Ann. § 2-19-109; defendants moved to dismiss on the ground that the statute had been amended to exempt Benton County whereupon plaintiff amended the complaint to allege that the exemption for Benton County was unconstitutional. *Id.* at 247. The lower court denied relief on the basis that the exemption did not violate the Tennessee Constitution. *Id.* at 248. On appeal, the Supreme Court reversed, holding that the exemption was unconstitutional; the case was remanded to the chancery court for further proceedings on the petition for writ of mandamus. *Id.* at 249. In the course of the opinion, the court stated "[u]ndoubtedly the plaintiff was entitled to a writ of mandamus under the provision of T. C. A. § 5-1-107." *Id.* at 248.

The issue of whether Tenn. Code Ann. § 5-1-107 is the exclusive jurisdictional basis of mandamus actions involving county duties was not essential to the resolution of these cases; there is no indication that the issue was presented in those cases as it is in the case at bar or that the courts considered the evolution of subject matter jurisdiction of chancery courts, as we discuss further below.

[8] We presume that the General Assembly is aware of prior enactments and of decisions of the courts when enacting legislation. *Ki v. State*, 78 S.W.3d 876, 879 (Tenn. 2002).

## II. Tenn. Code Ann. § 49-2-301(b)(1) and the Metro Charter

The next question presented is whether the Board has developed a policy for dismissing employees as required by Tenn. Code Ann. § 49-2-301(b)(1)(FF) and, if so, whether that policy eliminates the appeal procedure granted to non-teaching employees of the Board under sections 12.05 and 9.10 of the Metro Charter. The trial court held that the Board "has never passed an enactment 'develop[ing] a policy for dismissing . . . employees,'" and, because of that fact, Tenn. Code Ann. § 49-2-301(b)(1)(FF) does not explicitly or implicitly "abrogate or repeal an appeal to the School Board provided in sections 9.10 and 12.09 of the Metro Charter." The court further held that "in the absence of a dismissal plan as authorized by section 49-2-301(b)(1), Metro's only dismissal plan is section 9.10 and 12.09 of the Metro Charter which predate the EIA and have remained in effect." Upon the record presented, we are unable to determine the factual basis of these holdings inasmuch as there is no evidence with respect to questions which we have determined are germane to the resolution of the issue.

Tenn. Code Ann.§ 49-2-301(b)(1)(EE) and (FF) requires local boards of education to assign to the director of schools the duty to dismiss all personnel; it further provides that all employees in positions not requiring a teaching license are hired at the will of the director of schools and that the local board of education must develop a policy for dismissing such employees. In contrast, Metro Charter § 12.05 provides that, "[a]ny employee terminated from the classified service or suspended or demoted in pay grade, by his simple written request to the commission, shall have the action reviewed by the commission." Metro Charter § 12.09 provides that the Board constitutes a civil service commission with respect to nonteaching employees and, that in acting as a civil service commission, the Board must "to the extent deemed practicable" conform with the provisions of the Metro Charter with respect to "the discipline or dismissal of employees." Metro Charter § 9.10, titled "Civil service as to teachers and other educational employees," provides: "Any nonteaching employee of the board may have his dismissal reviewed by the court in the same manner provided by section § 12.07(h) for classified employees."[9]

At the outset of the hearing below, the court stated:

> We are here with a request for some extraordinary relief. The plaintiff had filed for peremptory writ of mandamus and Metro in response has filed a motion to dismiss on several grounds. So, at this time, the court will hear from

---

[9] Under Metro Charter § 12.03, a civil service commission has the duty to "[u]pon request of an affected employee, review suspensions, demotions or separation from service of any employee in classified service, and to render decisions thereon, subject to its rules." Metro Charter § 12.07(h) sets forth the procedures for disciplinary action within the classified service.

the plaintiffs. . . . And the reason I ask you to go first is because, now that we have the motion to dismiss, then what I want to hear from you is why the court should even hear the matter, so that's why we have the motion to dismiss. . . . And then, the other side, if the court determines it shouldn't be dismissed, that you have got a basis for the peremptory writ, then it would shift the back to Metro to show cause why the court shouldn't issue that.

Counsel for Ms. Aina-Labinjo proceeded to argue, in the course of which the court allowed Ms. Aina-Labinjo to file her W-2 form showing the Board as her employer.[10] Following Ms. Aina-Labinjo's counsel's argument, the court asked the Board's counsel to present his response and, in the course of argument, the following colloquy took place:

> THE COURT: If the Court were to deny the motion to dismiss, is there any further argument that you have for the Court not issuing the writ of mandamus?
> COUNSEL: Yes, Your Honor.
> THE COURT: Okay. If you would go on and give me those arguments, please.
> COUNSEL: . . .
> And answer is, even Charter 12.09 which the Plaintiffs rely upon which is the crux of the case says very clearly to the extent deemed practicable. If this is, now we're trying to adjudicate the rights of the parties and through a mandamus, then this is, again, this is not something that can be, this is treated as a ministerial act, instead, it would take some comprehensive program for the school board to figure out a way to make it deemed practicable and for the Court to have some guidance in making it deemed practicable to institute a set of policies to allow appeals for non-licensed, non-tenured employees which just does not exist and by virtue of the fact that it would be contrary to general state law it would be deemed not practicable; so therefore, a peremptory writ of mandamus should not issue.
> If anything, there is a lot of debate that needs to be had here and the case could perhaps proceed under declaratory judgment action where we could flesh out these matters, take a look at the support staff handbook which would also be relevant here which we would have to delve into to take a look at what policies are in place based on the handbook and the changes that happened in

---

[10] The following exchange occurred in the course of counsel for Ms. Aina-Labinjo's argument:

Counsel: I know this is not really a proof-taking hearing, but if the court would like, I have a copy of her W-2, which says Employer, Metropolitan Board of Education.
The Court: And we can file that as a late-filed exhibit to the request, the verified complaint.

2011 with the state legislature, analyze that, collect those materials together perhaps in cross summary judgment motions, some argument like that with all the proper filing before the Court construe the rights of the parties that way through a declaratory judgment action.

This is not a type of rubber stamping that needs to take place today to suddenly order the board of education from henceforth through peremptory writ of mandamus to start hearing all these appeals. For instance, we had received a copy of the W-2 today which may or may not be relevant, but that's the kind of documentation that perhaps needs to be gathered by both sides and developed and brought before the Court in some consolidated manner through a cross summary judgment or what have you.

THE COURT: When did Metro as a matter of practice quit hearing, when did the school board quit hearing appeals of civil service matters?

COUNSEL: I do not know. All I know is what, my guess is that the adoption of the Educational Improvement Act.

THE COURT: But you don't know?

COUNSEL: I don't know.

THE COURT: Okay.

COUNSEL: But we could bring, we could provide some testimony for Your Honor to fill in those gaps.

What I have been told is that, through the early 2000, 2003, the board adopted a set of governance policies and after the changes in the Educational Improvement Act and subsequent changes, either multiple changes to the state law throughout the '90s and in early 2000, the board delegated any last remaining authority it had to the director of the schools through its governance policies. And so the director of schools has taken up the lead in developing the handbook and whatnot. But again, I could provide some testimony on that. I can't testify myself, of course, it's just as what I understood in talking to my clients.

THE COURT: Okay. Thank you.

COUNSEL: Oh, excuse me. That happened in about 2002, 2003.

There was no testimony or other evidence introduced at the hearing as to what, if any, policy the Board has developed with respect to the dismissal of employees as required by State law. Following the hearing, the Board filed a Notice of Filing, attaching a copy of the Support Staff Handbook and stating that the handbook was "referenced in paragraph 13 of the complaint."[11] The court acknowledged the filing of the handbook in the Amended Order

---

[11] The handbook contains policies for the discipline and dismissal of nonteaching employees.

but did not otherwise reference the handbook[12]; it does not appear that the court considered the handbook in holding that the Board had not developed a policy for dismissing employees.

We are unable to determine whether the handbook was developed by the Board as required by Tenn. Code Ann. § 49-2-301(b)(1)(FF) or to rule on the impact of the policies in the handbook on the question of whether the provisions of the Metro Charter should control employee dismissal and discipline.[13]  Furthermore, there is no evidence upon which to determine whether the policies in the handbook can be read together with requirements of the Metro Charter relative to discipline and dismissal, such that continued compliance with the Charter's provisions are "practicable" as required by Charter section 12.09.

Accordingly, we reverse the order granting the petition, vacate the peremptory writ of mandamus and remand the case for further proceedings as set forth below.

### III.  Procedure on Remand and Conclusion

Notwithstanding our holding that the chancery court has jurisdiction to issue the writ of mandamus, we have determined that a declaratory judgment proceeding pursuant to Tenn. Code Ann. § 29-14-101, *et seq.*, is the more appropriate procedure.  "Mandamus is a special remedy in which the issues are severely limited." *Hayes v. Civil Serv. Comm'n*, 907 S.W.2d 826, 828 (Tenn. Ct. App. 1995).  In *Manhattan, Inc. v. Shelby Cnty.*, this Court stated the following standard for determining whether mandamus is a proper remedy:

> A writ of mandamus is an extraordinary remedy that may be issued where a plaintiff's right to the relief sought has been clearly established, the defendant has a clear duty to perform the act the plaintiff seeks to compel, and "there is no other plain, adequate, and complete method of obtaining the relief to which one is entitled ."

*Manhattan, Inc. v. Shelby Cnty.*, W2006-02017-COA-R3-CV, 2008 WL 639791, at *7 (Tenn. Ct. App. Mar. 11, 2008).  "The issuance of mandamus may be prevented only if another

---

[12] The court stated in the Amended Order: "After the Court announced its ruling from the bench in favor of [Ms. Aina-Labinjo], [the Board] filed an employee handbook.  The Defendants did not ask to supplement the record and did not explain the purpose of the filing."

[13] The Board, in its brief on appeal, details a process by which the handbook was developed and approved by the Board.  However, this is not evidence.  "It is well settled that 'the recitation of facts and argument contained in a brief submitted to this Court . . . are not evidence . . . [and] can[not] be considered in lieu of a verbatim transcript or statement of the evidence and proceedings.'" *State ex rel. Cain v. City of Church Hill*, E200700700COAR3CV, 2008 WL 4415579 (Tenn. Ct. App. Sept. 30, 2008) (quoting *State v. Draper,* 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990)).

remedy is 'equally as convenient, complete, beneficial, and effective as mandamus,' and is 'sufficiently speedy to prevent material injury.'" *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 479 (Tenn. 2004).

Ms. Aina-Labinjo petitioned the court for a writ of mandamus and in the alternative, requested a declaration of her rights under the Metro Charter. The Board's answer denied salient allegations of the petition, specifically the allegation that the provisions of the Metro Charter entitled Ms. Aina-Labinjo to appeal her termination to the Board. Tenn. Code Ann. § 29-25-107 provides that "if the answer [to the petition for mandamus] deny any material facts stated in the petition, the court may determine the issues upon evidence...". *See Hillhaven Corp. v. State*, 565 S.W.2d 210, 211 (Tenn. 1978) ("Clearly either party had a right to offer evidence in support of factual issues.").

Accordingly, the case is remanded for an evidentiary hearing and a declaration pursuant to the provisions of Tenn. Code Ann. § 29-14-101, *et seq.* as to whether the Board has complied with Tenn. Code Ann. § 49-2-301(b)(1) and as to the manner in which any policies adopted by the Board affect the pertinent provisions of the Metro Charter.[14]

_____

RICHARD H. DINKINS, JUDGE

_____

[14] We acknowledge the concerns expressed by the dissent; nothing in this opinion should be construed to hold that the pertinent provisions of the Metro Charter override the delegation of authority found at Tenn. Code Ann. § 49-2-301(b)(1). At the hearing below, the Board expressed a desire to demonstrate that the policy adopted by the Board is in accordance with Tenn. Code Ann. § 49-2-301(b)(1). The purpose of the remand is to determine whether the Board has developed the policy as required by law and whether the policy complies with state law, and to declare Ms. Aina-Labinjo's rights relative thereto.